UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
CHARLES A. STANZIALE, JR.,
CHAPTER 7 TRUSTEE OF STUDENT
FINANCE CORPORATION                                           :

                            Plaintiff,       :        MISC. NO. M8-85

     -against-                                                     :

PEPPER HAMILTON LLP, ET AL                             :        DOC # 2

                           Defendants.      :
------------------------------------------------------------------ x

[Stamp: U.S. DISTRICT COURT FILED JAN 03 2007 S.D. OF N.Y.]

07-427

## ORDER TO SHOW CAUSE

Upon the Memorandum of Law of Pepper Hamilton LLP ("Pepper") and the Declaration of Stephen J. Shapiro, it is hereby:

ORDERED that non party Mandiant Corporation ("Mandiant") show cause before the undersigned in Courtroom No. 17C, United States Courthouse, 500 Pearl Street, New York, New York, at 10:00 a.m./p.m. on the 16th day of January, 2007, why an order should not be entered, pursuant to F.R.C.P. 34(c), 37(a)(1) and 45: (i) compelling Mandiant to produce documents pursuant to a Subpoena *Duces Tecum* that was served upon it in connection with litigation currently pending in the United States District Court for the District of Delaware on a date and time set by the Court; and (ii) granting such other and further relief as the Court deems just and proper.

**FURTHER ORDERED**, that service of the Order to Show Cause shall be made personally on or before January 4, 2007.

**FURTHER ORDERED**, that Mandiant shall serve its answering papers, if any, to this Order to Show Cause by January 10, 2007; and, Pepper shall serve its reply papers, if any, by January 12, 2007.

NYDATA 282338_1

Dated: New York, New York
~~December~~ , 2006
Jan. 3, 2007

_____
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
CHARLES A. STANZIALE, JR., :
CHAPTER 7 TRUSTEE OF STUDENT
FINANCE CORPORATION :

                                    Plaintiff,       :  MISC. NO. M8-85

   -against- :

PEPPER HAMILTON LLP, ET AL :

                               Defendants. :
-------------------------------------------------------------------x

### DECLARATION OF STEPHEN J. SHAPIRO IN SUPPORT OF MOTION TO COMPEL DISCOVERY

Stephen J. Shapiro, an attorney admitted to practice before the Courts of the Commonwealth of Pennsylvania and the State of New Jersey, declares the following under the penalties of perjury pursuant to 28 U.S.C. § 1746:

1. I am an associate at Schnader Harrison Segal & Lewis LLP ("Schnader"), and counsel to Defendants Pepper Hamilton LLP ("Pepper") and W. Roderick Gagné. I submit this declaration in support of Pepper's motion to compel nonparty Mandiant Corporation, f/k/a Red Cliff Consulting, LLC ("Mandiant"), to produce documents responsive to a Subpoena *Duces Tecum* ("Subpoena") on a date and time set by the Court.

2. The Subpoena was issued to Mandiant in an effort to obtain discovery from it relevant to litigation currently pending in the United States District Court for the District of Delaware – *Stanziale v. Pepper Hamilton LLP, et al.*, No. 04-1551 (D. Del) and *Royal Indemnity Company v. Pepper Hamilton LLP, et al.*, No. 05-165 (D. Del). Mandiant was served with the Subpoena on November 21, 2006. Attached hereto as Exhibit "A" is a copy of the Subpoena and Proof of Service. To date, Mandiant has refused to comply with the Subpoena.

3. Student Finance Corporation ("SFC"), a former client of the Pepper law firm, was a Pennsylvania corporation in the business of originating or acquiring and then securitizing student loans from truck driving schools. Bankruptcy proceedings against SFC were initiated in the United States Bankruptcy Court for the District of Delaware in 2002 and Charles A. Stanziale, Jr., was appointed to serve as bankruptcy trustee for SFC (the "Trustee").

4. Prior to the bankruptcy, SFC owned several computer servers, one of which served as a repository for, among other data, emails to and from employees of SFC (the "Server"). Presumably as part of the Trustee's efforts to liquidate SFC's assets, the Server was sold at auction to an entity called Student Loan Servicing LLC ("SLS"), which was an affiliate of SFC not under the control of the Trustee. The data on the Server, including SFC's emails, was not removed from the Server before SLS took possession of it.

5. In 2002, the Trustee filed an adversary action against Royal Indemnity Company ("Royal") alleging that Royal, which had issued credit risk insurance policies to SFC, had discovered that SFC was engaging in fraudulent business practices but had concealed that information and had attempted to prop-up SFC to avoid facing claims on its insurance policies. *See Stanziale v. Royal Indemnity Company*, Adv. No. 02-6803 (Bankr. D. Del.) (the "Royal Litigation"). The emails and other data on the Server presumably were potentially relevant to the issues in the Royal Litigation. However, the Trustee apparently took the position that some of the emails on the Server – such as emails between SFC and its attorneys (including Pepper) – theoretically might be protected from disclosure by the attorney-client privilege. The Trustee apparently was not willing to review all of the emails on the Server to determine which emails, if any, were in fact protected from disclosure by the attorney-client privilege. Accordingly, the Trustee and Royal reached a compromise whereby the Trustee, Royal and SLS agreed to have an

independent third party extract only the emails from the Server that were not sent to or by SFC's lawyers.

6. Royal retained Mandiant, a technology consulting firm, to extract the emails from the Server. Pursuant to a written agreement between Royal, the Trustee and SLS, Mandiant was to program its extraction software in a fashion that would filter out all emails that were sent to or received from any email address that belonged to any of SFC's lawyers. *See* October 13, 2004 letter annexed to Exhibit "A." As part of this process, Mandiant agreed that it would not "disclose the contents of any files or other data located on the Servers to any person or entity other than Royal [through its lawyers], SFC [through its lawyers] and SLS [through its lawyers], or a judicial officer, unless required by law to do so." *Id.* at 2. After the agreement was put into place, Mandiant obtained a copy of the Server for processing, performed the extraction, and produced to Royal, the Trustee and SLS the thousands of emails that made it through the filtering software Mandiant applied. Mandiant also, on information and belief, retained and still possesses today a copy of the entire Server – not just the emails that made it through the filter. The Trustee and Royal subsequently settled the Royal Litigation.

7. In November 2004, the Trustee sued Pepper for, among other things, professional malpractice and breach of fiduciary duty arising out of Pepper's representation of SFC. *See Stanziale v. Pepper Hamilton LLP, et al.*, No. 04-1551 (D. Del). In March 2005, Royal sued Pepper for, among other things, negligent and fraudulent misrepresentation in connection with the SFC transactions that Royal insured. *See Royal Indemnity Company v. Pepper Hamilton LLP, et al.*, No. 05-165 (D. Del). Both cases against Pepper (the "Pepper Cases") allege (falsely) that Pepper was SFC's "general counsel" and knew or should have known that SFC was engaging in fraudulent business practices.

8. During discovery in the Pepper Cases, Royal produced the emails that Mandiant extracted from the Server. The Server, however, likely contains emails between SFC and its lawyers (including Pepper lawyers) that were not extracted because they were blocked by Mandiant's filtering software and, therefore, have never been produced in either the Royal Litigation or the Pepper Cases.

9. These emails may be highly relevant to Pepper's defenses in the Pepper Cases and/or are likely to lead to the discovery of admissible evidence. For instance, the Trustee has alleged that Pepper was SFC's "general counsel" and therefore knew or should have known that SFC was engaging in fraudulent business practices. Discovery in the Pepper Cases has demonstrated, however, that other law firms performed substantial legal work for SFC and documents related to those other representations may be stored on the Server. Pepper is clearly entitled to discovery of those documents. The emails may also support Pepper's defense that it was unaware of SFC's fraudulent business practices. Therefore, Pepper asked the Trustee to produce any emails on the Server that were not previously produced. The Trustee responded that he did not possess the Server and, therefore, could not produce the missing emails.

10. Because the Trustee claimed that he was not able to produce the emails in question and because SLS apparently is no longer in business, Pepper's only remaining option was to acquire the emails directly from Mandiant. Accordingly, on November 21, 2006, Pepper served a subpoena on Mandiant (a copy of the subpoena was also sent to counsel for Royal and the Trustee on November 22, 2006). The Subpoena directed Mandiant to produce the emails on the Server that were not produced during the Royal Litigation or, in the alternative, to produce the entire Server in the event that Mandiant did not maintain the withheld emails in a segregated file. *See* Exhibit "A" hereto.

11. On December 11, 2006, the date on which the Subpoena commanded Mandiant to produce the documents in question, Mandiant wrote to counsel for Pepper and explained that it would not produce the data requested lest it be deemed in breach of the confidentiality agreement into which it had entered. *See* Mandiant Letter attached hereto as Exhibit "B." In response, counsel for Pepper pointed out that Mandiant's out-of-court agreement with Royal, the Trustee and SLS (to which Pepper was not a party) permitted Mandiant to produce the documents requested if "required by law to do so" and that Pepper's Subpoena was just such a legal requirement. Pepper's counsel also explained that the out-of-court confidentiality agreement did not excuse Mandiant from its obligation to comply with the Subpoena and requested that Mandiant comply with it by December 20, 2006. *See* Pepper Letter attached hereto as Exhibit "C." To date, Mandiant has not produced the requested data.[1]

12. As a result of its failure to comply with the Subpoena, Mandiant should be compelled to respond to the Subpoena on a date and time set by the Court. If Mandiant fails to produce documents on the date and time set by the Court, appropriate sanctions should also be imposed, including a daily fine, until it produces such documents.

13. No prior application for this or similar relief has been requested.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 29, 2006, in Philadelphia Pennsylvania.

_____
STEPHEN J. SHAPIRO

---

[1] Pepper will, at its own expense, provide Mandiant with an appropriate storage device onto which Mandiant can copy the data from the Server, so cost should not be an issue.