UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
CHARLES A. STANZIALE, JR., : Misc. No. M8-85
CHAPTER 7 TRUSTEE OF STUDENT :
FINANCE CORP., :
 :
              Plaintiff, :
   -against- :
 :
PEPPER HAMILTON, LLP., et al., :
 :
             Defendants. :
------------------------------------------------------x

**MEMORANDUM OF LAW OF CHARLES A. STANZIALE, JR., CHAPTER 7 TRUSTEE OF STUDENT FINANCE CORPORATION IN OPPOSITION TO PEPPER HAMILTON, LLP'S MOTION TO COMPEL DISCOVERY FROM NONPARTY MANDIANT CORPORATION**

Lois H. Goodman
McElroy, Deutsch, Mulvaney & Carpenter, LLP
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4079
(973) 622-7711

*Attorneys for Plaintiff Charles A. Stanziale, Jr. Chapter 7 Trustee of Student Finance Corporation*

## PRELIMINARY STATEMENT/STATEMENT OF FACTS

Pepper Hamilton LLP ("Pepper") has moved this Court to compel discovery from Mandiant Corporation ("Mandiant"), pursuant to a subpoena, for use in <u>Charles A. Stanziale Jr., Chapter 7 Trustee of Student Finance Corp. v. Pepper Hamilton LLP, et al.</u>, Civil Action No. 04-1551 (JJF), now pending in the United States District Court for the District of Delaware (the "Action"). Charles A. Stanziale, Jr., the Chapter 7 Trustee (the "Trustee") of Student Finance Corporation ("SFC"), plaintiff in the Action, respectfully submits this memorandum of law in opposition to Pepper's motion to compel. The Trustee does not seek to bar Pepper from obtaining relevant discovery. Rather, the Trustee's objection to the motion is limited to the need to preserve the Trustee's attorney-client and work product privilege with respect to documents contained within the materials Pepper seeks, and to ensure that the costs associated with the production are borne by Pepper.

The Action was brought by the Trustee against Pepper, alleging, <u>inter alia</u>, that Pepper committed malpractice and breached its fiduciary duty in its representation of SFC. The computer server that is the subject of the subpoena served on Mandiant contains information relating to the operations of SFC. Most of the contents of the server have already been produced to Pepper. By its subpoena, and the present order to show cause, Pepper seeks production of those documents that were not previously produced, as potentially bearing on the Action.[1] The Trustee does not object to the discovery sought

---

[1]. Despite the fact that the Action is before the Hon. Joseph J. Farnan, Jr., U.S.D.J., who has decided a number of discovery issues, and has pending before him other motions related to attorney-client privileges, and that Mandiant has offered to make itself subject to the jurisdiction of the Delaware District Court, Pepper elected to circumvent that Court's oversight by bringing its application to this Court. Pepper proceeded by way of order to show cause, even though that discovery is not scheduled to close until April 6, 2007. Courts have recognized that there is a benefit inherent in allowing the court in which an action is pending to decide discovery issues. "The third-party subpoena route has the added benefit of allowing the

by Pepper, other than insofar as the materials sought pursuant to the subpoena are privileged.

Pepper states in its motion that "[t]he server likely contains documents highly relevant to the Pepper case." Pepper memorandum at 2. After SFC was put into involuntary bankruptcy in June 2002, the server was sold to SLS, a company related to SFC, and SFC continued to use the server and store information on it for a period of time. In the fall of 2004, the contents of the server was imaged by Mandiant and filtered so that non-privileged documents could be produced as part of the Trustee's litigation with Royal Indemnity ("Royal").[2] The Trustee did not waive SFC's privilege with regard to representation by Pepper in that litigation, and the Pepper communications were filtered out of the production. Royal, as the requesting party, bore the cost of the production, including the filtering for privilege.

Pepper represented SFC for a number of years but withdrew from that representation in April 2002. From that point on, Pepper provided very limited representation to SFC, and even that limited representation ended shortly thereafter. While the server at issue may have some limited communications that are relevant to Pepper's representation of SFC, the fact is that those communications would be from the time of Pepper's representation or shortly after Pepper withdrew. In the Action, the Trustee has waived any privilege that SFC may have had relating to its representation by

---

court in which the main litigation is pending to make the ruling." Smithkline Beecham Corp. v. Synthon Pharmaceuticals LTD., 210 F.R.D. 163, 169 n.7 (M.D.N.C. 2002). When the information is "sought via a subpoena, the third party has the right to request transfer of the dispute to the court in which the main litigation is pending for resolution." Further, "the court in which the litigation is pending will be in a better position to decide relevancy issues." Id. at 169 n7.

[2] Pepper says in the Declaration of Stephen Shapiro that "[t]he Trustee apparently was not willing to review all of the e-mails on the Server to determine which e-mails, if any, were in fact protected from disclosure by the attorney-client privilege." Shapiro Decl. ¶5. As Pepper is well aware, this is not a matter of simply reviewing a few e-mails – the server as filtered (and produced to Pepper) alone contains 16 gigabytes of data. Waters' Decl. at ¶ 2.

Pepper, as well as by other professionals prior to the appointment of the Trustee, which did not take place until September 29, 2003.[3] Accordingly, a simple solution to the issue posed by Pepper, and one to which the Trustee would not object, is the production from the server of any communications that took place prior to September 29, 2003, when the Trustee was appointed and by which time Pepper was no longer representing SFC. This would obviate the need for filtering by individual or by firm name, in favor of a single filter by date.

Contrary to Pepper's assertion that the Trustee has waived his right to object based on privilege, the correspondence between counsel, which Pepper has chosen not to advise the Court of include in its submission, makes clear that Pepper was on notice of the Trustee's position. In fact, there were several letters and emails exchanged between Pepper and the Trustee's counsel. See Waters' Decl. Exhibit A. Specifically, on November 22, 2006, the Trustee's counsel sent a letter to Mr. Shapiro outlining the concerns with regard to the privilege issue. See Waters' Decl. Exhibit B. Mr. Shapiro's response, dated December 5, 2006, clearly acknowledges that the Trustee had asserted the privilege with respect to certain communications contained in the server and was objecting to production of the privileged communications. In fact, Mr. Shapiro specifically wrote that "[t]he Trustee claims that the SLS Server contains attorney-client privileged communications between counsel for the Trustee and his agents and/or work

---

[3] The Trustee has not waived his privilege with regard to communications with counsel subsequent to his appointment. That representation was by a number of firms, including Dilworth Paxson LLP, Schwarz, Tobia, Stanziale, Sedita & Campisano, PA and McElroy, Deutsch, Mulvaney & Carpenter, LLP. Accordingly, the Trustee provided Mandiant with a list of counsel that might be party to communications contained on the server, which should not be produced. Waters' Aff. Exhibit D, pp. 1-2. Those communications while left in the SLS server were maintained in a password protected drive and were not copied to third parties. Waters' Decl. Exhibit F at 1.

4

product of the Trustee's counsel that will not be produced in these cases . . . ." Waters' Decl. Exhibit C at 1.

Subsequently, the Trustee received a letter from Mandiant dated December 14, 2006, stating that it would comply with the Third-Party Subpoena and turn over the communications on December 22, 2006 unless the Trustee objected.[4]  See Waters' Decl. Exhibit E. Although Pepper was already on written notice of the Trustee's position, by letter dated December 21, 2006, this firm put Mandiant on written notice as well, advising that the Trustee did not object to the production of e-mail communications between SFC and Pepper, or to the production of other non-privileged communications, but that the Trustee did object to the production of privileged communications with counsel subsequent to his appointment. Waters' Decl. Exhibit E at 1. A copy of the letter was sent to counsel for Pepper. Far from waiving his objection, the Trustee has put Pepper on notice on several occasions, and Pepper has acknowledged the Trustee's objection.

## ARGUMENT

### POINT I

#### THE TRUSTEE HAS NOT WAIVED HIS PRIVILEGE WITH REGARD TO COMMUNICATIONS WITH COUNSEL CONTAINED ON THE SLS SERVER

Rule 45(c)(2)(B) of Federal Rules of Civil Procedure provides for the protection of persons subject to subpoenas and states "a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon

---

[4] Mandiant initially objected to Pepper's subpoena on December 11, 2006. However, in a letter dated December 12, 2006, Pepper extended the return date of the subpoena, allowing Mandiant until December 20, 2006 to respond. See Waters' Aff. Exhibit E.

the party or attorney designated in the subpoena written objection to inspection and copying of any or all of the designated materials or the premises." It further states that "[i]f objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court . . . ." Fed. R. Civ. P. 45(c)(2)(B).

Pepper clearly received written objections, as contemplated by the rule. Pepper was made aware through the correspondence between counsel that the Trustee had no objection to the production of non-privileged communications on the SLS server, but that he would not waive the privilege with regard to communications with counsel after his appointment. Pepper seems to assert that the Trustee should have filed a formal objection or a motion to quash or modify the subpoena. Rule 45(c)(2)(B), which was relied on by Pepper, places no such burden on the objecting party but simply requires that the Trustee send a written objection to Pepper's counsel. See Fed. R. Civ. P. 45(c)(2)(B); see also DG Creditor Corp. v. Dabah (In re Acquisition Corp.), 151 F.3d 75, 81 (2d Cir. 1998)(Rule 45(c)(2)(B) applies with equal force to objections to document productions that are founded on the assertion of a privilege). Accordingly, the Trustee has not waived his privilege with regard to communications with counsel contained in the SLS server.

## POINT II

### PEPPER SHOULD BEAR THE COST OF OBTAINING THE COMMUNICATIONS AND FILTERING THE PRIVILEGED INFORMATION CONTAINED IN THE SLS SERVER

When the costs of producing the information sough would place an undue burden on the producing party, the party seeking production should bear the costs associated with

6

that production. In this case, Pepper should bear any costs associated with the production of non-privileged materials from the server.

The fact is that the information Pepper alleges is "highly relevant to the Pepper case" is readily available to it and is not the subject of the Trustee's objection. Pepper does not and cannot assert that it is seeking communications from the server from after September 29, 2003, when the Trustee was appointed; by then Pepper's representation of SFC had ended. Accordingly, the simple solution is have the material on the server screened so that only those communications from prior to the Trustee's appointment are produced. No one suggests that that cannot be done. The issue, however, is the cost – this is really the heart of Pepper's motion. Pepper has insisted that any cost arising from the production, other than the minimal cost of providing a server on to which to copy the contents of the SLS server, should be borne by the Trustee. Waters' Decl. Exhibit C at 1. Pepper should bear the cost of obtaining the communications and filtering the privileged information contained in the SLS server.

Rule 26(b)(2)(B) of the Federal Rules of Civil Procedure states "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost . . . ." Fed. R. Civ. P. 26(b)(2)(B). Although there is a presumption that the responding party shall pay the expenses associated with producing electronic discovery, those costs can be shifted back to the requesting party, upon showing of good cause. See Zubulake v. UBS Warburg, LLC, 217 F.R.D. 309 (S.D.N.Y. 2003). Good cause is shown when "electronic discovery imposes an 'undue burden or expense' on the responding party. Id. at 318; Fed. R. Civ. P. 26(b)(2)(B). "The burden of or expense of discovery is, in turn, 'undue'

when it 'outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" Id. (quoting Fed. R. Civ. P. 26(b)(2)(C)(iii)). Courts "[are] also permitted to impose conditions on discovery when it might be duplicative." Id. at 318, n47; see Fed. R. Civ. P. 26(b)(2)(C)(i).

Zubulake sets forth a seven-factor test to determine whether the cost should be shifted to the requesting party; (1) the extent to which the request is specifically tailored to discover relevant information; (2) the availability of such information from other sources; (3) total cost of production, compared to the amount in controversy; (4) total cost of production, compared to the resources available to each party; (5) the relative ability of each party to control costs and its incentive to do so; (6) the importance of the issues at stake in the litigation; and (7) the relative benefits to the parties of obtaining the information. Zubulake, 217 F.R.D. at 322.

The first two factors are the most important as they determine the relevancy of the information sought. Id. at 323. The second group of factors, comprised of factors 3, 4, and 5, addresses the cost issues. Id. Next, the 6th factor will only rarely come into play. Collectively, the first six factors "correspond to the three explicit considerations of Rule 26(b)(2)(iii)." Id. Finally, the 7th factor is least important because "it is fair to presume that the response to a discovery request generally benefits the requesting party." Id. Ultimately, the Court should conduct the appropriate cost-shifting analysis with the production of responsive documents from a small sample of the request as the determination is fact-intensive. Id. at 324.

By applying the Zubulake test, clearly the cost should be shifted to Pepper, the requesting party. First, Pepper is seeking a broad category of communications, although most of the communications on the server have already been produced. Furthermore, to the extent that the communications sought are those involving Pepper, specifically its e-mails with SFC, those e-mails should be available from Pepper's own database. SFC's hard copies of emails with Pepper have already been produced to Pepper during document discovery. Pepper has also produced its emails to SFC but is seeking copies of its own e-mails on the SLS server because Pepper had in place a policy of destroying e-mails that were 90 days old unless specifically saved. If Pepper seeks those e-mails, it should have to pay for them, rather than seeking to have the Trustee bear the cost of replacing what Pepper has destroyed.

Next, to the extent that the cost incurred in re-filtering the SLS server is substantial (Mandiant has indicated that it may be in the range of $35,000-50,000), that cost is easier borne by Pepper than by the Trustee. The purpose of the appointment of a Trustee is to collect money for the benefit and protection of the creditors and the estate. In light of that purpose, Pepper clearly has more resources available than the Trustee, as the depletion of the Trustee's funds will ultimately harm the creditors in the bankruptcy proceedings. Accordingly, taking the Zubulake factors as a whole, the factors weigh in favor of shifting the cost to Pepper.

## CONCLUSION

For the forgoing reasons, the Trustee respectfully submits that the privilege pertaining to communications subsequent to the Trustee's appointment has been properly preserved by the written objections of counsel. Pepper should be allowed access to the

non-privileged materials it seeks, by allowing it to obtain a copy of the information on the server filtered to exclude materials from after the Trustee's appointment on September 29, 2003. Finally, the cost of production, including the filtering, should be borne by Pepper.

Respectfully Submitted,

McElroy, Deutsch, Mulvaney & Carpenter, LLP

By: _____
Lois H. Goodman (LHG-4484)
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4079
(973) 622-7711

*Attorneys for Plaintiff Charles A. Stanziale, Jr.
Chapter 7 Trustee of Student Finance
Corporation*

Dated: January 10, 2007

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK:

: SS:

COUNTY OF NEW YORK:

I, Michael S. Waters, of full age, being duly sworn, hereby deposes and says:

1. On January 11, 2007, I caused the Memorandum of Law of Charles A. Stanziale, Jr., Chapter 7 Trustee of Student Finance Corporation In Opposition to Pepper Hamilton, LLP's Motion to Compel Discovery From Non-Party Mandiant Corporation and the Declaration of Michael S. Waters, Esq. to be filed, via hand-delivery, with the Clerk of the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Room 1940, New York, New York 10007.

2. On January 10, 2007, I also caused courtesy copies of the above documents to be forwarded to the Hon. Charles S. Haight, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Room 1940, New York, New York 10007, via Federal Express.

3. On January 10, 2007, I also caused the above documents to be served upon all counsel on the attached service list, via electronic-mail.

4.  On January 11, 2007, I also caused copies of the above documents to be served upon all counsel on the attached service list, via First Class Mail.

                                                Michael S. Waters

Sworn and subscribed to before me this 11th day of January, 2007.

DIANA M. CHOY
A Notary Public Of New Jersey
My Commission Expires Nov. 17, 2007

## Student Finance Corp./Pepper Hamilton Service List
### Updated: January 10, 2007

Stephen J. Shapiro, Esq.
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 2600
Philadelphia, Pennsylvania 19103
Counsel for Pepper Hamilton LLP and W. Roderick Gagne
sshapiro@schnader.com

Neil G. Epstein, Esq.
Eckert Seamans Cherin & Mellott, LLC
1515 Market Street, 9th Floor
Philadelphia, Pennsylvania 19102-1909
Counsel for W. Roderick Gagne, Pamela Bashore Gagne, Robert L. Bast and the Trusts
nepstein@eckertseamans.com;

Veronica E. Rendon, Esq.
Jason M. Butler, Esq.
Arnold & Porter LLP
399 Park Avenue
New York, New York 10022
Counsel for McGladrey & Pullen LLP and Michael Aquino
veronica.rendon@aporter.com;
jason.butler@aporter.com

John H. Eickemeyer, Esq.
Vedder, Price, Kaufman & Kammholz, P.C.
805 Third Avenue
New York, New York 10022
Counsel for Freed Maxick & Battaglia, CPAs, PC
jeickemeyer@vedderprice.com

Michael E. Forman, Esq.
Steven Obus, Esq.
David McTaggart, Esq.
Andre G. Castaybert, Esq.
Proskauer Rose LLP
1585 Broadway
New York, New York 10036
Counsel for MBIA (Wells Fargo)
mforeman@proskauer.com; sobus@proskauer.com
dmctaggert@proskauer.com; acastaybert@proskauer.com

Steven M. Farina, Esq.
Thomas H.L. Selby
Williams & Connolly LLP
725 12th Street, NW
Washington, D.C. 20005
sfarina@wc.com; tselby@wc.com

Kenneth J. Pfaehler, Esq.
Sonnenschein Nath & Rosenthal LLP
1301 K Street N.W.
Suite 600, East Tower
Washington, D.C. 20005-3364
Counsel for Royal Indemnity Company
kpfaehler@sonnenschein.com